IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SOLOMON T. STANLEY, | CASE NO. 1:11-cv-00981-LJO-GSA |
| Plaintiff, | **ORDER ON MOTION FOR PARTIAL** |
| vs. | **SUMMARY JUDGMENT** (Doc. 16.) |
| STATE OF CALIFORNIA, et al., | |
| Defendants. | |
| _____/ | |

## I. INTRODUCTION

This action arises from the alleged retaliation, harassment, and religious discrimination plaintiff Solomon T. Stanley ("plaintiff") experienced while working as a correctional officer for the California Department of Corrections and Rehabilitation ("CDCR"). Plaintiff alleges violations of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e, and California's Fair Employment and Housing Act ("FEHA"), Cal. Govt. Code § 12900, *et seq*. Now before the Court is the CDCR's motion for partial summary judgment. The CDCR seeks summary judgment on plaintiff's religious discrimination and retaliation claims. Having considered the parties' arguments and submissions,[1] this

---

[1] This Court carefully reviewed and considered the record, including all evidence, arguments, points and authorities, declarations, testimony, statements of undisputed facts and responses thereto, objections and other papers filed by the parties. Omission of reference to evidence, an argument, document, objection or paper is not to be construed to the effect that this Court did not consider the evidence, argument, document, objection or paper. This Court thoroughly reviewed, considered and applied the evidence it deemed admissible, material and appropriate for summary adjudication. This Court does not rule on evidentiary matters in a summary judgment or summary adjudication context, unless otherwise noted.

1

Court GRANTS the CDCR's motion.

## II. BACKGROUND

**A. Facts**

In 1991, the CDCR hired plaintiff as a correctional officer and in 1993 he began working at North Kern State Prison ("NKSP"). (Doc. 16-3, p. 35-36). The CDCR maintains grooming standards which require all of its male correctional officers to keep their hair shorter than the top of their shirt collars and prohibits beards unless the employee's personal physician verifies a skin irritation or disorder. (Doc. 17-3, p. 11).

Plaintiff joined the Rastafarian religion in 1999. (Doc. 16-3, p. 44). The Rastafarian religion requires its male adherents to wear their hair in dreadlocks and a full beard. (Doc. 17-3, p. 2 ¶ 3). Plaintiff began growing dreadlocks in 2001. (Doc. 16-3, p. 44). On February 28, 2003, plaintiff requested a religious accommodation to wear his hair in dreadlocks.[2] (Doc. 16-3, p. 100). NKSP responded with a letter which informed plaintiff that in order for NKSP to consider the request, plaintiff's religious leader needed to submit a letter verifying that the adult male members of the faith are required to wear their hair in dreadlocks. (Doc. 16-3, p. 101).

On April 10, 2003, plaintiff provided a letter from his religious leader that contained the requested information. (Doc. 16-3, p. 102). In response, NKSP issued a memorandum on June 25, 2003 ("June 2003 Memo"). (Doc. 16-3, p. 99). The memorandum confirmed receipt of plaintiff's request for religious accommodation and stated: "A request for an exemption to the Peace Officer Grooming Standards has been forwarded to the Deputy Director for review and approval. Pending this decision, you may continue wearing your hair in dreadlocks." (*Id*.).

Plaintiff began growing a beard in 2005. (Doc. 16-3, p. 45). On May 13, 2008, NKSP issued a memorandum which informed all peace officers who wished to request a facial hair medical exemption, to submit a physician's note no later than June 30, 2008. (Doc. 16-3, p. 112).

On October 7, 2008, Lieutenant S. Smith ("Lt. Smith") and Sergeant T. Swain ("Sgt. Swain")

---

[2] Plaintiff's request states, "[r]espectfully request reasonable accommodations to wear my hair in dreadlocks due to my religious beliefs. Also requesting reasonable accommodations to either wear a black or green knit hat to put my dreadlocks underneath and off my collar to meet the departmental grooming standards." (Doc. 16-3, p. 100).

2

spoke to plaintiff about his hair and beard. (Doc. 16-3, p. 113). During the discussion they explained to plaintiff how to request an exemption but plaintiff told them he had already done his part. (*Id*.). Lt. Smith and Sgt. Swain told plaintiff that he needed to talk to Connie Gibson, the Associate Warden and EEO Coordinator, ("Associate Warden Gibson") because she looked in his personnel file and did not find an accommodation for the grooming standards. (Doc. 16-3, p. 39). Plaintiff met with Associate Warden Gibson and gave her a copy of the June 2003 memo, which she made a copy of. (Doc. 17-3, p. 3 ¶ 7; Doc. 16-3, p. 40). During the meeting, she asked plaintiff to submit a religious accommodation request. (*Id*.). Plaintiff alleges that when he told her he already submitted a request, she agreed with him and nothing else was said. (Doc. 17-3, p. 3 ¶ 7).

On December 8, 2008, Captain Vince Adams ("Capt. Adams") issued a memorandum ("December 2008 memo") to plaintiff which ordered him to comply with the CDCR's grooming standards by shaving his beard and wearing his hair in compliance with the policy. (Doc. 17-3, p. 11). The memo further stated that if plaintiff wanted to request a non-medical exemption he needed to submit a written request by December 22, 2008. (*Id*.). Plaintiff complied with Capt. Adams' memo and submitted a request for religious accommodation on December 9, 2008.[3] (Doc. 16-3, p. 103). On January 28, 2009, NKSP granted plaintiff's request for religious accommodation. (Doc. 16-3, p. 104). The accommodation permitted plaintiff to wear his "hair in dreadlocks and a neat facial beard" and required him to keep his hair "above [his] uniform shirt collar." (*Id*.).

Plaintiff alleges that sometime in 2010, his position as "Central Kitchen Officer No. 1" was changed from a bid position to a management position which made him ineligible for it. (Doc. 17-3, p. 4 ¶ 13). Plaintiff heard from other employees that his job was going to be taken away from him because he would not cut his hair or shave his beard. (*Id*.). Plaintiff also believes that his position was taken away from him because he filed complaints with the Equal Employment Opportunity Commission

---

[3] Plaintiff's December 9, 2008, request for accommodation states:

> I respectfully request reasonable accommodation to wear my hair in dreadlocks and wear a beard due to my religious beliefs. I am involved in the Rastafarian religion. The adult male members of my faith are required to wear their hair in locks and beards. Therefore I am requesting exemption from the Peace Officer Grooming Standards.

(Doc. 16-3, p. 103).

3

("EEOC"). (*Id*.). On December 9, 2010, plaintiff stopped working for the CDCR pursuant to a workers' compensation claim. (Doc. 17-3, p. 4 ¶ 15).

## B. Administrative and Judicial Complaints

### 1. Administrative Filings Related to Instant Action

On January 7, 2009, plaintiff filed a charge of discrimination with the EEOC in which he alleged religious discrimination and harassment. (Doc. 16-3, p. 95). The EEOC issued a right to sue letter on September 27, 2010. (Doc. 16-3, p. 98). On December 28, 2010, plaintiff filed the instant action in Fresno County Superior Court which was later removed to this Court. (Doc. 1).

### 2. Administrative Filings Related to State Court Action

On June 9, 2010, plaintiff filed a second charge of discrimination with the EEOC which alleged discrimination based on race and age. (Doc. 16-3, p. 96). Plaintiff filed a third charge of discrimination which alleged discrimination based on religion and retaliation on February 11, 2011. (Doc. 16-3, p. 97). On February 7, 2012, plaintiff filed a second complaint in Fresno County Superior Court in which he alleged age, race, and religious discrimination; harassment; retaliation; and failure to prevent the discrimination, harassment, and retaliation in violation of the FEHA. (Doc. 16-3, p. 69). The complaint was based on the facts alleged in the second and third charges filed with the EEOC. (Doc. 17-1, p. 5 ¶ 24).

## C. Procedural History

With regard to the instant action, plaintiff alleges three causes of action: (1) religious discrimination, harassment, and retaliation, in violation of the FEHA; (2) failure to prevent religious discrimination, harassment, and retaliation, in violation of the FEHA; and (3) religious discrimination, harassment, and retaliation, in violation of Title VII. (Doc. 1-1).

Now before the Court is the CDCR's motion for partial summary judgment filed on November 16, 2012. (Doc. 16). The CDCR contends that it is entitled to summary judgment on plaintiff's Title VII and FEHA retaliation claims because plaintiff failed to exhaust his administrative remedies. The CDCR also argues that it is entitled to summary judgment on plaintiff's Title VII and FEHA religious discrimination claims because plaintiff did not suffer an adverse employment action. Plaintiff filed an opposition to the CDCR's motion to which the CDCR replied. This Court VACATES the December

20, 2012, hearing or oral argument, pursuant to Local Rule 230(g).

### III. LEGAL STANDARD

Summary judgment is appropriate when the pleadings, the disclosure materials, the discovery, and the affidavits provided establish that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A material fact is one which may affect the outcome of the case. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute is genuine if the evidence is such that a reasonable trier of fact could return a verdict in favor of the nonmoving party. *Id*.

A party seeking summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (internal quotation marks omitted). Where the movant will have the burden of proof on an issue at trial, it must "affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party." *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007). "On an issue as to which the nonmoving party will have the burden of proof, however, the movant can prevail merely by pointing out that there is an absence of evidence to support the nonmoving party's case." *Id*. (citing *Celotex*, 477 U.S. at 323).

If the movant has sustained its burden, the nonmoving party must "show a genuine issue of material fact by presenting *affirmative evidence* from which a jury could find in [its] favor." *FTC v. Stefanchik*, 559 F.3d 924, 929 (9th Cir. 2009) (emphasis in original). The nonmoving party must go beyond the allegations set forth in its pleadings. *See* FED. R. CIV. P. 56(c). "[B]ald assertions or a mere scintilla of evidence" will not suffice. *Stefanchik*, 559 F.3d at 929. Indeed, the mere presence of "some metaphysical doubt as to the material facts" is insufficient to withstand a motion for summary judgment. *Matsushita Electric Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Id*. at 587 (citation omitted).

In resolving a motion for summary judgment, "the court does not make credibility determinations

or weigh conflicting evidence." *Soremekun*, 509 F.3d at 984.  Rather, "[t]he evidence of the [nonmoving party] is to be believed, and all justifiable inferences are to be drawn in [its] favor." *Anderson*, 477 U.S. at 255.  Inferences, however, are not drawn out of the air; the nonmoving party must provide a factual predicate from which the inference may justifiably be drawn. *See Richards v. Nielsen Freight Lines*, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985).

## IV. DISCUSSION

### A. Title VII and FEHA Retaliation Claims

The CDCR contends that it is entitled to summary judgment on plaintiff's Title VII and FEHA retaliation claims because plaintiff failed to exhaust his administrative remedies.[4]

Under both Title VII and the FEHA, plaintiffs are required to exhaust their administrative remedies before resorting to the Courts. *Lyons v. England*, 307 F.3d 1092, 1103-04 (9th Cir. 2002); *Okoli v. Lockheed Technical Operations Co.*, 36 Cal. App. 4th 1607, 1613 (1995).  Under Title VII, plaintiffs exhaust their administrative remedies by filing a timely charge with the EEOC. *Vasquez v. County of Los Angeles*, 349 F.3d 634, 644 (9th Cir. 2003).  Under the FEHA, plaintiffs exhaust their administrative remedies by filing a timely charge with the Department of Fair Employment and Housing ("DFEH"). *Okoli*, 36 Cal. App. 4th at 1613.  Allegations not included in the administrative charge generally may not be considered by the Court unless the conduct is like or reasonably related to the allegations in the administrative complaint, or could reasonably be expected to grow out of the administrative investigation. *Vasquez*, 349 F.3d at 644; *Okoli*, 36 Cal. App. 4th at 1614-17.

In considering whether the civil claim is reasonably related to the allegations in the administrative charge, "it is appropriate to consider such factors as the alleged basis of the

---

[4] Plaintiff argues that the CDCR is precluded from introducing evidence that plaintiff failed to exhaust his administrative remedies.  Plaintiff maintains that because the CDCR refused to produce documents related to its fourth affirmative defense (*i.e.*, plaintiff's alleged failure to exhaust) that it should not be allowed to present documentation related to this issue in support of its motion for summary judgment.  Plaintiff's argument is unpersuasive.  The only documentation the CDCR relies upon in support of its exhaustion argument is plaintiff's EEOC charge filed in January 2009, which is attached to plaintiff's civil complaint. (Doc. 1-1, p. 16).  Accordingly, plaintiff was not blind-sided by the documentation relied upon.  The Court is also unpersuaded by plaintiff's argument that the CDCR waived its exhaustion argument as it pertains to the Title VII claim.  The CDCR's fourth affirmative defense clearly states that "[t]he Complaint, and each cause of action contained therein, is barred and this Court is without jurisdiction as plaintiff has failed to exhaust his administrative and judicial remedies." (Doc. 1-3, p. 3).

1  discrimination, dates of discriminatory acts specified within the charge, perpetrators of discrimination
2  named in the charge, and any locations at which discrimination is alleged to have occurred." *Freeman*
3  *v. Oakland Unified Sch. Dist.*, 291 F.3d 632, 636 (9th Cir. 2002). "The crucial element of a charge of
4  discrimination is the factual statement contained therein." *Id*. While it is true that court's construe the
5  language of the administrative charge with utmost liberality, "there is a limit to such judicial tolerance
6  when principles of notice and fair play are involved." *Id*.

7  Plaintiff's January 7, 2009, administrative charge alleges that he was harassed and discriminated
8  against based on his religion.[5] (Doc. 16-3, p. 95). The charge specifically provides that in June 2008,
9  plaintiff was subjected to harassment when he was given a memorandum regarding departmental
10 grooming standards despite the fact that his personal grooming standards reflected his religion. (*Id*.).
11 Plaintiff checked the box on the form for discrimination based on religion but did not check the box for
12 retaliation. (*Id*.).

13 Plaintiff's deposition testimony provides that in June 2008, Sgt. Mattson tried to force him to
14 sign an OJT[6] on grooming standards for medical reasons. (Stanley Depo. p. 119). When plaintiff told
15 him he did not have a medical excuse but a religious accommodation, Sgt. Mattson asked what religion
16 he belonged to. (*Id*.). Plaintiff's declaration provides that during this interaction Sgt. Mattson gave him
17 a copy of the May 13, 2008, memorandum regarding facial hair medical exemptions. (Doc. 17-3, p. 2
18 ¶ 5; p. 9).

19 In plaintiff's civil complaint, he alleges that he was retaliated against for filing an administrative
20 charge. (Doc. 1-1, p. 8 ¶ 12). Specifically, plaintiff alleges that defendants: (1) stalked him at work; (2)
21 changed his employment position so he is no longer eligible for it; (3) tried to get him to sign a
22 memorandum that contained false information in an attempt to set him up at work; (4) referred to him
23 as an "ugly motherfucker"; (5) referred to him as a "motherfucker"; (6) spat on the ground where he
24 walked; and (7) sent him the message that Capt. Adams was going to make him cut his hair. (*Id*.). None
25 of these acts fall within the scope of an investigation that the EEOC would have conducted based on the

---

[5] Plaintiff filed a charge with the EEOC and DFEH simultaneously. (Doc. 16-3, p. 18). Processing by the DFEH was waived and the EEOC processed the complaint. (Doc. 16-3, p. 20).

[6] It is unclear from the record as to what the term "OJT" means.

7

act alleged in plaintiff's January 7, 2009, administrative charge.

Based on plaintiff's declaration and deposition testimony, the only person involved in the June 2008, incident was Sgt. Mattson. It is unclear from plaintiff's civil complaint and opposition as to who engaged in the retaliatory conduct alleged in the civil complaint. Thus, there is nothing to show that the retaliatory conduct alleged in the civil complaint would have fallen within the scope of the investigation of the incident involving Sgt. Mattson. In addition, with regard to the allegation that plaintiff's employment position was changed so that he was no longer eligible for it, there is no evidence to show that Sgt. Mattson had the authority to change the position. Further, none of the retaliatory acts alleged is related to the facts of the June 2008 incident. Finally, plaintiff alleges that the retaliatory acts occurred after he filed the EEOC charge. Thus, the retaliatory acts did not occur within the time frame of the events alleged in the EEOC charge. A reasonable investigation of the act alleged in the administrative charge would not have encompassed the retaliatory acts alleged in the civil complaint. Accordingly, plaintiff did not exhaust his administrative remedies and this Court lacks jurisdiction to hear plaintiff's claims that he was retaliated against for filing his administrative charge.

The CDCR's motion for summary judgment on plaintiff's retaliation claims under Title VII and the FEHA is GRANTED.

**B. Title VII and FEHA Disparate Treatment Religious Discrimination Claims**[7]

The CDCR contends that it is entitled to summary judgment on plaintiff's Title VII and FEHA disparate treatment religious discrimination claims because plaintiff cannot show that he suffered an adverse employment action.

Under Title VII and the FEHA, an employer is prohibited from discriminating against any

---

[7] The Court acknowledges that there is a dispute between the parties as to whether plaintiff's religious discrimination claim was discussed at the meet and confer prior to the filing of the instant motion. The Court's scheduling conference order mandates that prior to filing a motion for summary judgment the parties shall meet and confer to discuss the issues to be raised. (Doc. 9; p. 3). The parties are reminded that *all* issues raised in the motion must be discussed and that pursuant to the Court's inherent power to control its docket the Court could dismiss the instant motion for failure to comply with the Court's order. Nevertheless, the Court proceeds to consider the merits of the CDCR's motion.

8

individual because of the individual's religion.[8] 42 U.S.C. § 2000e-2(a)(1); Cal. Govt. Code § 12940(a). Discrimination can be established by direct or circumstantial evidence. *Godwin v. Hunt Wesson, Inc.*, 150 F.3d 1217, 1221-22 (9th Cir. 1998); *DeJung v. Superior Court*, 169 Cal. App. 4th 533, 549-50 (2008). "When the plaintiff offers direct evidence of discriminatory motive, a triable issue as to the actual motivation of the employer is created even if the evidence is not substantial." *Godwin*, 150 F.3d at 1221. "Direct evidence is evidence which, if believed, proves the fact [of discriminatory animus] without inference or presumption." *Id.* Direct evidence "typically consists of clearly sexist, racist, or similarly discriminatory statements or actions by the employer." *Coghlan v. Am. Seafoods Co. LLC*, 413 F.3d 1090, 1095 (9th Cir. 2005).

If the plaintiff has no direct evidence, he may prove discrimination by using circumstantial evidence via the three-stage burden-shifting framework articulated in *McDonnell Douglass Corp. v. Green*, 411 U.S. 792 (1973); *Guz*, 24 Cal. 4th at 354. Under the *McDonnell Douglas* burden-shifting framework, a plaintiff must first establish a prima facie case of discrimination by showing that (1) he is a member of a protected class, (2) he is qualified for his position, (3) he experienced an adverse employment action, and (4) other similarly situated employees outside of the protected class were treated more favorably, or other circumstances surrounding the adverse employment action give rise to an inference of discrimination. *Bodett v. Coxcom, Inc.*, 366 F.3d 736, 743 (9th Cir. 2004). Once a prima facie showing has been made, the burden shifts to the defendant to produce some evidence demonstrating a legitimate, non-discriminatory reason for the adverse employment action. *Id.* If the defendant satisfies its burden, plaintiff must show that the reason advanced by defendant was merely a pretext for discrimination. *Id.*

**1. Direct Evidence**

Plaintiff contends that he has direct evidence of discriminatory intent. He points to three incidents in support of his argument. First, he points to his declaration which provides that Sgt. Swain

---

[8] Due to the similarity between federal and state employment discrimination laws, California Courts look to pertinent federal precedent when applying its own statutes. *Guz v. Bechtel Nat. Inc.*, 24 Cal. 4th 317, 354 (2000). Accordingly, the Court's analysis, although it primarily relies on federal law, resolves both plaintiff's Title VII and FEHA claims.

told Lt. Jay Manges ("Lt. Manges") that plaintiff's religion is not a real religion.[9] (Doc. 17-3, p. 2 ¶ 6). This comment does not constitute direct evidence of discriminatory intent because it does not lead to the unavoidable conclusion that plaintiff was treated less favorably because of his religion. Moreover, Sgt. Swain was not involved in the adverse employment actions alleged by plaintiff in his opposition thus, plaintiff has failed to connect the comment with an adverse action. *See Godwin*, 150 F.3d at 1221 (recognizing that a stray remark, uttered in an ambivalent manner, and not tied directly to an adverse action is insufficient to show direct evidence of discrimination).

Next, plaintiff points to his declaration which provides that "[s]ince January of 2009, Captain Adams has made it known that he was going to make [plaintiff] cut his hair. He told Lt. Jay Manges that he was going to do everything in his power to get [plaintiff] to cut [his] hair and shave [his] beard." (Doc. 17-3, p. 4 ¶ 12). The CDCR objects to this portion of plaintiff's declaration for lack of foundation, pursuant to FED. R. EVID. 602. The CDCR argues that plaintiff fails to lay a foundation regarding what Capt. Adams said. "Generally, Rule 602 requires that a witness' testimony be based on events perceived by the witness through one of the five senses . . . first-hand observation is the most common form of personal knowledge." *Los Angeles Times Comm., LLC v. Dept. of the Army*, 442 F. Supp. 2d 880, 886 (C.D. Cal. 2006). Because plaintiff has failed to show that he has first hand knowledge of what Capt. Adams said to Lt. Manges, the CDCR's objection is SUSTAINED.

Finally, plaintiff points to his religious accommodation. He argues that his religious accommodation required him to wear a beard less than one inch in length while other correctional officers at NKSP, who are not Rastafarian, were allowed to wear full beards greater than one inch in length. Plaintiff's religious accommodation permitted him to wear "a neat facial beard." (Doc. 17-3, p. 13). In plaintiff's declaration, he states that the term "neat facial beard" means that the beard has to be less than one inch in length. (Doc. 17-3, p. 3 ¶ 10).

The CDCR objects to this portion of plaintiff's declaration for lack of foundation, pursuant to FED. R. EVID. 602. The CDCR contends that plaintiff fails to lay a foundation regarding what the CDCR

---

[9] The CDCR objects to this portion of plaintiff's declaration as immaterial (Doc. 19, p. 8 ¶ 33) as well as several other facts listed in plaintiff's statement of "additional disputed material facts." In a motion for summary judgment, the Court is only concerned with issues of material fact. Accordingly, if the Court considers a fact, the Court deems it material. The Court will not address this objection on a fact-by-fact basis.

1  meant by the term "neat facial beard." This Court agrees. Because plaintiff has failed to show that he
2  has first hand knowledge that the CDCR's definition of "neat facial beard" is a beard less than one inch
3  in length, the CDCR's objection is SUSTAINED.

4  Plaintiff has failed to defeat the CDCR's motion for summary judgment with direct evidence of
5  discriminatory intent. Accordingly, the Court turns to the parties' arguments regarding circumstantial
6  evidence.

7  **2. Circumstantial Evidence**

8  The CDCR contends that plaintiff cannot establish a prima facie case of discrimination under
9  the *McDonnell Douglas* burden-shifting framework because he was not subjected to an adverse
10 employment action.

11 Under Title VII and the FEHA, an adverse employment action is one that affects the terms,
12 conditions, or privileges of the plaintiff's employment. 42 U.S.C. § 2000e-2(a)(1); *Chuang v. Univ.of*
13 *California Davis, Bd. of Tr.*, 225 F.3d 1115, 1126 (9th Cir. 2000); *Yanowitz v. L'Oreal USA, Inc.*, 36
14 Cal. 4th 1028, 1052-54 (2005). Under some circumstances, a warning letter may constitute an adverse
15 employment action. *Fonseca v. Sysco Food Servs. of Ariz., Inc.*, 374 F.3d 840, 847 (9th Cir. 2004).
16 Transfers of job duties may also constitute an adverse employment action. *Yartzoff v. Thomas*, 809 F.2d
17 1371, 1376 (9th Cir. 1987).

18 In plaintiff's opposition, he sets forth two adverse employment actions. First, he alleges that
19 defendant threatened to discipline him if he did not submit a religious accommodation request despite
20 the fact that defendant already knew that plaintiff received a religious accommodation. Plaintiff relies
21 on the December 2008 memo he received from Capt. Adams in support of this allegation. The memo
22 ordered plaintiff to comply with the CDCR's grooming standards by shaving his beard and wearing his
23 hair in compliance with the policy or to submit an exemption request by December 22, 2008. (Doc. 17-
24 3, p. 11). Plaintiff argues that this letter constitutes an adverse employment action just as the warning
25 letter in *Fonseca* constituted an adverse employment action.

26 Plaintiff's argument is unpersuasive. In *Fonseca*, plaintiff was suspended for accidentally
27 dropping a pallet of zucchini. *Fonseca*, 374 F.3d at 848. The suspension was later reduced to a warning
28 letter that was placed in plaintiff's file. *Id*. The Ninth Circuit determined that the warning letter still

1  constituted an adverse employment action, particularly in light of the fact that defendant publicized the
2  discipline to all of its employees. *Id*. The letter at issue here was not a disciplinary letter. Rather, it was
3  a notice that provided plaintiff with the opportunity to comply with the CDCR's grooming standards or
4  submit an accommodation request. In addition, the letter did not threaten discipline and nothing in the
5  record suggests that the letter was publicized to other employees.

6  Furthermore, the letter was not superfluous because plaintiff had not yet received a religious
7  accommodation. In 2003, plaintiff requested a religious accommodation to wear his hair in dreadlocks.
8  (Doc. 16-3, p. 100). His request was forwarded to the Deputy Director for review and he was permitted
9  to wear his hair in dreadlocks pending the Deputy Director's decision. (Doc. 16-3, p. 99). Capt. Adam's
10 December 2008 memo acknowledges that plaintiff believed that this interim permission constituted a
11 religious accommodation but that an exhaustive search revealed that a decision was never made
12 regarding plaintiff's 2003 accommodation request. (Doc. 16-3, p. 113). Moreover, plaintiff's 2003
13 religious accommodation request did not request an accommodation for his beard. (Doc. 16-3, p. 100).

14 Second, plaintiff alleges that he suffered an adverse employment action when his position was
15 taken away from him when it was turned into a management position. Plaintiff's declaration provides
16 that from 2003 until 2010, he held the position of "Central Kitchen Officer No. One." (Doc. 17-3, p.
17 4 ¶ 13). He explains that sometime in 2010, the position was changed from a bid position to a
18 management position which plaintiff could not bid for. (*Id*.). Plaintiff has heard from other employees,
19 including Correctional Officer Steve Schnell, that his job was taken away from him because he would
20 not cut his hair and shave his beard. (*Id*.).

21 The CDCR objects to this portion of plaintiff's declaration on foundational grounds, pursuant
22 to FED. R. EVID. 602. It contends that plaintiff fails to lay a foundation regarding his assertion that the
23 position was taken away from him because he would not cut his hair and shave his beard. (Doc. 19, p.
24 10 ¶ 44). Because plaintiff does not have first hand knowledge that the position was re-classified
25 because he would not comply with the CDCR's grooming standard, the CDCR's objection is
26 SUSTAINED.

27 The Court finds that plaintiff has failed to submit sufficient admissible evidence which shows
28 that he was subjected to an adverse employment action. Thus, plaintiff has failed to establish a prima

facie case of discrimination under the *McDonnell Douglas* burden-shifting framework for his disparate treatment religious discrimination claims.

**C. Title VII and FEHA Religious Accommodation Claims**

The CDCR argues that it is entitled to summary judgment on plaintiff's failure to accommodate theory of religious discrimination because plaintiff cannot show that he was subjected to discriminatory treatment.

"A plaintiff who fails to raise a reasonable inference of disparate treatment on account of religion may nonetheless show that his employer violated its affirmative duty under Title VII to reasonably accommodate [his] religious beliefs."[10] *Peterson v. Hewlett-Packard Co.*, 358 F.3d 599, 606 (9th Cir. 2004). "[R]eligious accommodation claims are analyzed under a two-part framework." *Lawson v. Washington*, 296 F.3d 799, 804 (9th Cir. 2002). Under the first part, plaintiff must establish a prima facie case by showing that: (1) he had a bona fide religious belief, the practice of which conflicts with an employment duty; (2) he informed his employer of the belief and conflict; and (3) the employer subjected him to discriminatory treatment because of his inability to fulfill the job requirement. *Peterson*, 358 F.3d at 606; *Lawson*, 296 F.3d at 804. Once an employee establishes a prima facie case, the burden then shifts to the employer under the second part of the framework to show that it "initiated good faith efforts to accommodate reasonably the employee's religious practices or that it could not reasonably accommodate the employee without undue hardship." *Id*.

Plaintiff alleges that he was subjected to discriminatory treatment in relation to the length of his beard. He contends that his religious accommodation required him to wear a beard less than one inch in length while other correctional officers at NKSP, who are not Rastafarian, were allowed to wear full beards greater than one inch in length. (Doc. 19, p. 9 ¶ 38-40). Plaintiff's religious accommodation permitted him to wear "a neat facial beard," (Doc. 17-3, p. 13), it did not require him to wear a beard

---

[10] Because California courts look to federal cases interpreting Title VII in evaluating failure to accommodate claims under the FEHA, this Court relies on federal law in evaluating both plaintiff's Title VII and FEHA failure to accommodate claims. *See Soldinger v. Northwest Airlines, Inc.*, 51 Cal. App. 4th 345, 370 n.11 (1996); *Cook v. Lindsay Olive Growers*, 911 F.2d 233, 241 (9th Cir. 1990).

less than one inch in length.[11]  Moreover, as pointed out by the CDCR, plaintiff's religious accommodation request merely requested permission to wear a beard, it did not mention the length of the beard. (Doc. 16-3, p. 103).  The Court finds that plaintiff has failed to show that he was subjected to discriminatory treatment thus, he has failed to establish a prima facie case for his religious accommodation claim.

## V. CONCLUSION AND ORDER

For the reasons discussed above, this Court:

1. VACATES the December 20, 2012, hearing or oral argument, pursuant to Local Rule 230(g); and

2. GRANTS the CDCR's motion for partial summary judgment on plaintiff's Title VII and FEHA retaliation and religious discrimination claims.

IT IS SO ORDERED.

**Dated:   December 17, 2012**           /s/ Lawrence J. O'Neill
                                      UNITED STATES DISTRICT JUDGE

---

[11] As discussed above, plaintiff's declaration provides that the term "neat facial beard" means that the beard has to be less than one inch in length. (Doc. 17-3, p. 3 ¶ 10). The CDCR objected to this statement on foundational grounds and the Court sustained the objection. *See supra*, section IV(B)(1).